In the Matter of ALEXANDER ACKERSON, an Attorney, Respondent.

First Department, July 2, 1924.

Attorney and client — disciplinary proceedings — attorney suspended for six months for conversion of client's money.

An attorney suspended for six months for professional misconduct where it appears that he converted money collected by him for his client and did not pay the amount to his client until after complaint was made against him before the grievance committee.

DISCIPLINARY proceedings instituted by the Association of the Bar of the City of New York.

*Einar Chrystie*, for the petitioner.

*Spalding & McCable* [*Lyman A. Spalding* of counsel], for the respondent.

CLARKE, P. J.:

The respondent was admitted to practice as attorney and counselor at law at the December, 1913, Term of the Appellate Division, First Department.

The petition and supplemental petition allege that the respondent has been guilty of unprofessional conduct in that he converted moneys of his clients to his own use in two separate instances. As to the second of the charges the learned official referee reports that there is, in his opinion, an insufficiency of proof to justify a finding that the respondent is guilty. In that conclusion we concur and that charge is dismissed.

The first charge is that in June, 1919, one Hyman Goldenberg retained the respondent to collect a claim of $900, which he had against the firm of Daly & Lipschutz; that the respondent with his client's consent effected a settlement with said defendants in the sum of $150 and converted the whole of said sum to his own use; that the respondent failed to remit to his client any part of the moneys collected by him until after he had appeared before the committee on grievances on July 7, 1920, in response to the charges served upon him. It is undisputed that at the time of the retainer of respondent, Goldenberg, his client, then paid him $50

First Department, July, 1924.        [Vol. 209

on account of fees; that due to respondent's efforts, and with the consent of his client, a settlement of the $900 claim was effected in the sum of $150 and respondent duly received said sum; that no part thereof was paid to his client until after respondent had appeared before the grievance committee in the investigation preliminary to this proceeding. The evidence shows that respondent received from his client a retainer of $50 on June 20, 1919, upon the verbal agreement that if he collected the whole $900 he was to receive $100 additional fee and if he collected part of it he was to receive but $25 more. On March 24, 1920, the respondent prepared and sent to Goldenberg a general release of the claim against Daly & Lipschutz with a request that he execute and return it. This release was accompanied by a letter in which respondent stated, among other things, as follows: " I beg to enclose you herewith general release to be signed by you at the pencil cross and acknowledged before a Notary Public who should sign where indicated in pencil. After this paper has been signed please return the same to me at once and I will secure the money and send it to you."

The release was duly signed and returned to respondent by his client and thereafter a check for $150 dated March 26, 1920, was received by respondent from the attorney for the defendants Daly & Lipschutz. Respondent testified that he called up Mr. Goldenberg the same day or the next day stating that he had received the money. Goldenberg denied this and testified that he waited three or four weeks for such notice, and then called upon the respondent at his office about the matter, at which time respondent promised to send the money. He further testified that thereafter he made several demands on respondent over the telephone, on each occasion being advised by the respondent that he would send him a check in a few days. There was a sharp conflict of testimony upon the events that occurred at the time Goldenberg called at respondent's office, the respondent testifying that Goldenberg called at a time when he was busily engaged with a Mr. Caraher (a witness herein); that respondent requested Goldenberg to wait a little while or to come back later. Goldenberg became very much excited and finally agreed to return, but never did.

When before the grievance committee respondent stated as follows: " Upon my return from Virginia, if my recollection serves me right, I found a note by my stenographer that Mr. Goldenberg had been down to the office during my absence. Now, I have no recollection of what Mr. Goldenberg says of his coming down to the office and finding me there. I may be wrong about that, but I have no distinct recollection about that."

However, before the referee, the respondent testified in great

detail to the circumstances relating to that interview. He further testified that following the interview just mentioned he called up Goldenberg and told him if he wanted him to, respondent would deduct the $25 out of the $150 and send him a check for the balance. But Goldenberg said, " don't do that, I will be down," and he never came down. Goldenberg's testimony is that having failed to receive anything but promises from respondent he finally retained another attorney who wrote to the respondent on June 10, 1920: " My client, Mr. Hyman Goldenberg, of this City has requested me to write to you and request you to send him a check for the sum of $150 collected by you for him in the above entitled action. I understand that you have repeatedly promised to send the same but have failed to do so, unless you send this money to me or my client within five days, my client will proceed against you as he shall see fit."

To which respondent replied in part as follows: " Responding to your favor of the 10th instant I beg to advise you that I will take this matter up with you the early part of next week, at which time I hope to be able to conclude it."

The respondent further testified that after receiving the check for $150 he cashed the same and put the money in a steel filing cabinet that he kept locked all the time. Also, that the envelope containing the $150 remained in the cabinet from March twenty-seventh until July. The evidence shows that in March, 1920, respondent's account at his bank had been so reduced that the bank refused to accept further deposits from him and also that there were judgments against him unsatisfied of record during the period in question.

The referee reports that upon the evidence he finds nothing of value upon which to predicate the assumption that any substantial dispute as to fees ever existed between respondent and his client. " When, after the investigation before the grievance committee had commenced, respondent finally settled with his client, he had no difficulty in doing so upon the basis of his, respondent's own contention. Having in mind the evidence as to respondent's financial condition, and after weighing the evidence and giving at the same time due consideration to surrounding facts and probabilities, I am compelled to conclude that respondent's explanation is totally unsatisfactory. It is beyond belief that, after Goldenberg's repeated efforts to secure a remittance from respondent, he should have retained another attorney to collect the money if respondent had, as the latter contends, told him to but call and get it. Nor does the quality of respondent's testimony as to his keeping the

47

$150 in his filing cabinet appeal to the referee. Again, even assuming there was a dispute between respondent and Goldenberg over the additional $25 for fee, respondent failed to follow the easy, safe and well established course of sending immediately to his client a check for the balance not in dispute." From all the evidence he finds the respondent guilty of misconduct as an attorney at law as charged in the petition.

We think upon an examination of the record that the evidence sustains the conclusion of the learned official referee and we approve the same. We cannot accept the story told by the respondent that after he had cashed the check, not through his bank, but by a friend, he kept the identical money in his filing cabinet from March until July in view of the fact of repeated promises to pay over, when the only controversy, if there was any between the two, was over an additional fee of twenty-five dollars which his client admitted was due to him and which he promptly allowed him to retain when the matter was closed up after the hearing before the grievance committee. That the client retained another lawyer to collect from the respondent and then brought the matter to the attention of the grievance committee strongly corroborates his claim. It seems clear to us that the financial necessities of the respondent caused the improper retention and use of the client's money.

For this professional misconduct the respondent should be suspended from practice for six months, with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions to be incorporated in the order to be entered hereon.

Merrell, Finch, McAvoy and Martin, JJ., concur.

Respondent suspended for six months. Settle order on notice.